Good morning, your honors. May it please the court, my name is Mary Schultz. I represent the gallant James Barrett. I'd like to reserve five minutes for rebuttal. This court should reverse the trial court for two primary reasons. First, the magistrate erred in granting judgment notwithstanding the verdict in our favor on forfeiture. Any jury verdict must be upheld if it's supported by substantial evidence. How did BDSI forfeit anything? How did they do it? What's the forfeiture? The forfeiture is a failure to timely assert its rights under the invention agreement. When did they lose their rights under the invention agreement? They could have paid them virtually immediately to VCL. What rights did they have to assert, given that there was an immediate demand? Well, just that the evidence was that there was not an immediate demand by BDSI to VCL. The strongest evidence are applied to three primary pieces of evidence that we presented. First of all, with respect to the timely assertion, the assertion was required to be made before the inventor, James Barrett, transferred his patent rights to VCL. Because at the time that transfer was made by Mr. Barrett to VCL, he had evidence that Mr. Barrett still owned those patent rights. Go ahead. He asked the question, why do you say he styled himself as an inventor, not as a owner? He was transferring whatever rights an inventor has to a patent. He said because that is the thing to have in order to register a patent. In 2008, 2011, and 2012, contracts between Mr. Barrett and VCL identify Mr. Barrett as the inventor and the owner of all of the patents and patent rights. But the jury suggested that if he had any rights in them, that his ownership left, his rights in it left, at the time he was working for the other entity. The jury did not find that. The jury did find that. The jury did not find that. What the jury found in question one was that Mr. Barrett developed in part his inventions while he was at VDSI. The jury found in question four that VDSI forfeited its rights. And they found that primarily on three pieces of evidence. Well, I think they found it on its intentional immorality, but also three pieces of evidence. First of all, in the contracts between Barrett and VCL, VCL is acquiring all patent rights from Mr. Barrett, not from VDSI. VCL is acquiring the rights from Mr. Barrett for good and valuable consideration, not through an invention agreement. And by law and by evidence, if VDSI had timely asserted its rights at the time of that transfer, Mr. Barrett could not assign his ownership of those rights because he would have been divested of that ownership. That is the law and that is the evidence. Second, this was the precise testimony of VDSI's patent lawyer, Mr. Steinberg. Mr. Steinberg told the jury just that. At the time of Mr. Barrett's transfer to VCL, the evidence is from Mr. Steinberg that he told VDSI, VDSI needs to do the corporate-to-corporate assignment. VDSI must transfer to VCL if it is asserting its rights under the invention agreement. He said, and I quote, there needed to be a process in these assignments if VDSI is asserting its ownership under the IA. And that process is, must be a corporate-to-corporate assignment. It wasn't asserting its rights under the IA. It had already conveyed everything to VCL back in 2014. That is VDSI's position on appeal. That was not their position at trial. I'm going to read you from the record at 2-1-2. This is the opening statement of counsel, VDSI's counsel. VDSI owned Mr. Barrett's inventions under the employment agreement. Yes, that's absolutely consistent. They owned it under the agreement and then they transferred them to their parent. Well, I think as Judge Leal has pointed out, their argument here is that they didn't own it. Well, they owned it to begin with and then they were transferred. Well, they forfeited that ownership. That is the key. Well, Mr. Kennedy, that's the question I'm trying to figure out. If, in fact, he lost any right on the hiring and on his, if you will, signing of the 2007 agreement, or 2003 agreement, it seems to me at that point he loses every right he has and they were transferred, as Judge Lynn has suggested, to the parent company, there's nothing then to forfeit. Well, he didn't lose the right because the contract, the VDSI contract itself, allows for a waiver. Secondly, he didn't lose the right because the California law exempts certain inventions from transfer. Well, sir, the jury found that just exemptions did not apply. That's a jury finding. No, the jury did not find that. The jury was never asked that. There was no question ever presented to the jury, did Mr. Barrett lose his rights or did this automatically transfer? But there was a question asked of the jury, is this was invented during the course of his employment with VDSI and they said yes. I'm sorry, I didn't hear that last part. During his employment, was this developed in this part of his employment? That was a jury question. It was. I'm sorry, I didn't hear that. Take your time. I'm sorry. Mr. Taylor, you may go. It's relevant to me and it's my thing. Your Honor, the jury only found that these inventions were developed during the time that Mr. Barrett was employed. That was a distinction that was argued over, including the summary judgment, and if the law of the case was, through the summary judgment order, that that's not sufficient, may we acknowledge that the commercial products, the inventions, known as the commercial products, were developed while Mr. Barrett was at VDSI? Well, the jury found, I'll read the questions. You know, we haven't given you any. Question number one, do you find it more likely true than not that James Barrett developed, in part, on the time of Venture Design Services, meaning before using any of VDSI's equipment, supplies, or facilities, the inventions that he came down with as line tracer, gas scrubber, gas monitor, and the answer to each question? That's correct. During VDSI, we did have a test that he had developed or began with commercial products during the time he was at VDSI, but the evidence was sufficient. The evidence was that Mr. Barrett retained his rights because that is what is being transferred to VCL in 2018, 2011, and 2012. This is purely an issue of applying the contracts as written. And it's supported by law. If you look at the Alzheimer case, which certainly is not an uncertain decision, but there isn't an uncertain decision. There is long-standing law of successive assignments. If you look at these employment agreements, and what Alzheimer understands is if there is some mechanism, such as a contract or a regulation, in Alzheimer's there was a Florida regulation that vests the ownership of a patent in the employer, and the employee has no rights to assign. The employee is divested of those rights because of that contract, unless the employer waived its rights. This is an Alzheimer fact, if you know it correctly. And the case is very important. The IMATEC case that I cited out of the Southern District of New York, with the results of Bethel Practical Matters, DCL wanted to have a claim deed from Mr. in order to get the patent properly registered and numbered. What's wrong with saying, we don't have any rights to these inventions and ownerships and inventions, but we want to have this assignment from you so that we can get things squared with a patent office? Well, that's certainly a theory, Your Honor, but the issue on appeal is whether there was substantial evidence to support the forfeiture verdict. And the jury rejected that. And in fact, substantial evidence doesn't support the verdict. Senator Hibby's theory.  VDSI forfeited its rights through some connection, even after they had already assigned everything to VCL. That seems to me, perhaps I'm missing something. The evidence needed to show, we needed to show, that in theory, basically what we showed is that VDSI was attempting to assert its ownership agreement with Mr. Barrett through the IAA. VDSI attempted to assert that ownership agreement against VCL at the time of the transfer, because they sent them these corporate-to-corporate assignments, which their lawyer told them were necessary, because if in fact VDSI had received those rights under the employment agreement, to enable those rights to go to VCL under the R&D agreement, then Mr. Barrett had nothing to assign to VCL. That doesn't answer the jury's greatest question. Why is it that simply because there were other agreements from your client to VCL, any more than a quick claim, if you will, of any right or interest or whatever, he might on occasion suggest? I mean, that happens in real estate transactions all the time. You always get these quick claim deeds from the wives, or the husbands, who maybe they got some interest in some transaction someplace, somewhere, and all they do is take a quick claim deed, and then you know for sure that all of the right title and interest has been transferred. Well, again, that's one theory of the anonymous. It's a theory, but I guess with Judge Flynn's question as to what the jury answered, if the jury answered that he developed all these patents during the time he was employed, and if he signs a 2003 agreement with VDSI that the inventions were automatically transferred, and then VDSI transfers automatically to VCL under a separate agreement all of those right titles and interests, all that could be left is a transfer, which would be subject to the same interest as a quick claim deed from your client to VCL. But that was not the evidence. No, I'm trying to figure out. I'm not figuring out what the evidence. I'm now figuring out what did the jury decide? How could the jury have decided this was a forfeiture if, in fact, the jury decided that all of the right title and interest in the inventions automatically transferred under the 2003 agreement while he was working for VDSI? Because the jury never decided that. Yeah, well, the question was not given to the jury. Question number one was an admitted fact, and I objected to giving the question to the jury in that way because that was something we had conceded. There is a difference between the invention and the development of the product. As McGarrett always said, he developed the inventions that became known as the Mind Tracer while he was at VDSI, and that was never contested. The issue was whether or not VDSI captured the ownership of those inventions through the money agreement, and if they did, which they asserted they did, and they asserted that throughout the trial, ownership, then the jury felt those rights were forfeited. Well, but they did get ownership. It's just that they transferred them to VCI after getting the ownership. Well, they did not. There's no evidence in VDSI. Well, he has an automatic transfer agreement to VCL. But they could waive that. There is no evidence in VDSI transferred to VCL, and that's precisely what Mr. Steinbrook was telling me. You have to evidence this transfer from VDSI to VCL Here are the contracts that do that. Here are the drafts we have for the record. VCL came back and said, No, we are not going to do it that way. We're going to acquire direct from Barrett. That was evidence of forfeiture. Mr. Armantrout also asserted, We sent these drafts to VCL. We asserted our, we tightly asserted our rights. VCL said, No, we are not going to use your ownership to us. We're not going to use your corporate to our corporate. We are going to acquire from Mr. Barrett directly that under all the laws of successive assignment, it is a forfeiture. There are seven of them. You can take seven at a time. Excuse me, Mr. Armantrout, because of the misfortune of the clock. Thank you, Mr. Armantrout. May I ask, when you come back, did you identify where it says, he's been writing assignments that he is leaving or because you haven't filled that in? No. Okay. When you come back. Thank you. Good morning. And may it please the court, David Elkins will be here after the appellees. Venture Dessert Services Incorporated and Venture Incorporated implemented. I want to hone in on the issue that the panel was just asking about, which is how could there be a forfeiture given these automatic assignments? And the premise, I think, as Michelle stated in her briefs, is that there could only have been, given the later individual assignments, from Mr. Barrett directly to VCO. In light of the inventions agreement, there could only be two explanations for that. One, Mr. Barrett asserts, is that Mr. Barrett invented fully the three inventions before he began working at VTSI. That was the key factual issue in a trial and in the case. And second, Mr. Barrett posits, if he didn't fully develop the inventions before he began at VTSI, then there must have been a forfeiture waiver. Otherwise, these individual assignments were invalid. The jury found, as the panel has recognized, that the inventions were developed by Mr. Barrett at VTSI using VTSI resources, meaning that by operation of law, the inventions agreement and its assignment clause divested automatically its ownership in the inventions as of the time they were created. And as the panel has also recognized in your questions, the services agreement between VTSI and VCL automatically transferred ownership to VCL. So how, then, could there be a forfeiture or waiver? You did not object to the forfeiture of the construction. We did, Your Honor. We objected to both waiver and forfeiture. And the accusations are correct in that we objected to the forfeiture construction. I will perhaps ask my colleague to look up, because I don't have it ready. But the position is that there was no evidence of forfeiture. There was no evidence that was there for you. On Rule 51, you would have objected to the giving of a forfeiture construction. We did. We fought over that tooth and nail, Your Honor. In fact, we objected to both waiver and forfeiture. And in after the jury, we argued the instructions after the jury and on to the day in the court. Your Honor, thank you. So the judge, as I understood it, said we're not going to give the waiver instruction, because there's no evidence of waiver. But we're going to give the forfeiture instructions. Do I correct Your Honor any case? I believe it's our brief. But we'll get to the site momentarily. The judge indicated when he struck the waiver, he said he took the waiver instruction under submission after we argued it. And he indicated at the time that the forfeiture instruction would go if the waiver instruction would go. He then presented final instructions to the parties. Waiver was missing.  We argued it outside the presence of the jury. Mr. Curtis, I forgot the question. The thought of it makes sense. The agreement between Barrett and VCL, which is science, Barrett's rights as an inventor to VCL, is prepared by Mr. Steinberg, who is an attorney for VPSI and acts for the principal, presumably authorized to be drafted that way. If, indeed, Mr. Barrett had no ownership rights, why did you have that agreement? That's a good question, Your Honor. The reason, and Mr. Steinberg testified to this, and he cited it in our brief, but the signing of that agreement is interdicted by the parties before any inventions are created. For purposes of the PTO, establishing ownership with the PTO, there has to be a description of what's being signed, and it has to relate to the invention that is the subject of the present application compending. And so what was done in this case and what is done in general, Mr. Steinberg testified, and this is general time when you have an employee who has a signed rights to future inventions, is that you have to have an assigned document that references the very invention that was later created. Who is out here? The agreement between VPSI and VCL is to the patent office. Because VPSI could say, we got all ownership of these patents, of our inventions, when we hired them back in 2003, and we've had an agreement with VCL where they passed automatically. So if you need another quick claim date, clear things up, it should be VPSI-VCL agreement.  There should have been two assignments, largely with the PTO, one from Barrett to VPSI and one from VPSI to VCL. But in general, when a signed documentation is filed with the PTO to establish ownership, it's generally confirmatory. It's not a new contract. Now, is there any evidence from the record that says the general industry practice in applying to the PTO, even though the inventor never really had any ownership of the patent device? The inventor is always named as part of the sign-off, the discussion that in trial in Mr. Steenberg's direct testimony didn't get that precise either. But in this case, it was a confirmatory assignment filed for this whole purpose of tapping things. The reference to the document to good and valuable considerations is false? Well, no, the good and valuable consideration, and the parties actually, and there was a jury instruction that addressed this very point, Your Honor. The good and valuable consideration was the same consideration in the assignment agreement, which was Mr. Barrett's employment and continued employment. It would have been so much clearer if it had said, if any, so we're only willing to make it clear that it was. We all had the same thought that this is half the argument, that this is a kind of a good claim. But usually, we would reference something like, if any, or any rights. A claim state could be applied in several ways, Your Honor. I'm just going to go first, Your Honor. I heard Mr. Schultz say that in 2008-2011, contracts between Barrett and ACL assignment contracts identified him not only as the inventor, but also as the owner. Do you agree with that? I can look at it, because now that I'm noted, I think the sprassers will be taxed. Well, that's the first time I've heard it, Your Honor. That's why I thought Judge Linden's question was very good to your point. So it would be good to have your side of the view. I'm looking, by way of example, at the record of 529, which is the 2011 Schultz address, so the one closest to 528. I don't see that he's called himself the owner. Your Honor. No, I don't. I'm looking at the first one, the fourth line trace of the product, and it is in this case at 2008. This is a 2008 agreement, and it recites that Mr. Barrett has invented a wireless communication system, which everybody called Line Tracer, and it does not indicate anywhere that he is the owner. It just refers to him as an owner. Great. Mr. Schultz, maybe that would give us another prior citation to back up your statement earlier on in the plaintiff's argument. I mean, the reason this is important is that forfeiture would really determine an ownership, and if, in fact, if VCI or VDSI had automatically transferred everything VCL had, there's no way there could be forfeiture, which would be a reason as a matter of law to suggest that that ought to be different than the jury had found. But if, in fact, one can suggest that Barrett was an owner or somehow VDSI was an owner, then at that point forfeiture, your motion cannot be granted. That's why I think that's pretty important. That's why I'm kind of surprised that you haven't got that down. Well, to your point, Your Honor, who owned what when? Well. And why these owners or why these extra, we call them quit-claim deeds, were granted, and why not? The reason that we busted at that trial, when we advanced the trial, was that the only reason for these assignments was for documentation purposes of the PTU. They did not have independent significance. Nobody brought up a trial that this agreement also showed Barrett as the owner? No. Not that I recall, Your Honor. You mean, you're referring to the individual assignment? Not that I recall, Your Honor. I did want to say that the reason that the court's order for judgment is the forfeiture, I think, is important. The only reason, from the police perspective, was the police had essentially prevailed on everything except for forfeiture. And the only reason we even moved, given that it seemingly would not disturb any other part of the verdict, was because we understood that Mr. Barrett was going to use that argument to assert that he was the prevailing party on a contract claim under the evidences agreement. And therefore, notwithstanding that he did not get any of the relief that he sought, he was the prevailing party to recover all of his attorney's case. So we filed a motion under Rule 50, which we'll let you come in. Just to foreclose that argument. All right. I'm confused by the significance of forfeiture, even if it's a legitimate question. If VDSI conveyed its rights to VSL, what was there for it to forfeit? Nothing. And is it true that it conveyed its rights to VSL, I'm sorry, VCL, was it, at the very beginning, so that this happened virtually immediately? In this, Your Honor, in fact the services agreement between VDSI and VCL was established at the time of VDSI's formation, I believe in April of 2003. Mr. Barrett signed some pensions agreement in June of 2003. And therefore, the two agreements existed before he joined VDSI. And they operated as a matter of law. VDSI's VCL agreement was in May 2003, and Barrett was hired in June 2003. So by that time, VDSI had transferred to VCL not only any pensions that they had at that time, but any future pensions. So the minute that Barrett signed his VDSI contract, whatever VDSI had shot over to VCL. Correct. And subject, of course, to the invention's creation. And so at the time of creation under federal circuit law, the assignments operate automatically to future insurance ownership, first VDSI and then to VCL. Thank you very much. Thank you. If you found the citation, Mr. Barrett, do you have any objection to the forfeiture instruction? All right. Well, that's what we have, of course. Sir, absent any other questions from the panel, I don't have any. Thank you. Especially given it's getting almost out of time. And we'll see. Ms. Rose. Yes. Can you give me a citation to the record as to whether there's any mention that Barrett was an owner in any of the 2008 to 2011 contracts in which he's signed whatever he had to VCL? The contract language is also listed as statutory. I'm sorry, the contract language 2008, 2009, and 2012 is set aside or, Mr. Barrett, does your by-cell sign transfer convey to a signing VCL the entire right, title, and interest in due success by law? The only entity that can convey the entire title, right, title, and interest is the owner. So the contract claimant, the claimant who has a colorable claim to himself, might say, I'm conveying everything under a blue painting, and might indeed have nothing. This is assumed between the parties that Mr. Barrett is the only entity who could convey the entire right, title, and interest that makes him the owner as a matter of law. That's a good argument, but there isn't any language which says he's the owner, right? And I've got to infer that based on the law that you've signed to me. No, based on the language that basically you've signed to me. So based on the law that you've signed to me, you want me to interpret that language to suggest he's the owner. That's your argument. I'm saying the jury accepted that. All right. Two other pieces. The R-512, your invention. This is a piece. Well, that's certainly true, but the jury, the question is whether we have evidence to support that. Your Honor, because I want to mention that. If the verdicts were inconsistent, if the verdicts were inconsistent, that's what we're trying to find out. Then the remedy is a new trial. It is not to enter a judgment on the same verdict. On the same verdict. Why? Well, it depends on if there's evidence. It depends on if the judge believes that the evidence supports the motion. There's evidence of both questions. There's evidence of both questions. But you're kicking away from the district court. Now it's discretionary. If the district court gets this motion for a judgment, there's a better law than the district court can look at the evidence and suggest whether there's any evidence, whether the evidence supports the motion or does not. If there's substantial evidence to support the jury's verdict, then you don't grant the motion. In this case, the district court said there is no evidence to support the jury's verdict. And the entirety of the record contradicts that finding. I understand. The evidence, the bottom line is that if those verdicts were inconsistent, if there was evidence to support motion one and evidence to support question four, the remedy is not to remove that verdict. You're going to lose efficiency. The evidence is to reverse what happened in the trial. Okay.  Thank you very much. Thank you. Thank you.
judges: Bea, N.R. Smith, Lynn